## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

|  |  |
|---|---|
| PENSION BENEFIT GUARANTY CORPORATION<br>1200 K Street, N.W.<br>Washington, D.C. 20005<br><br>        Plaintiff,<br><br>        v.<br><br>KIMBALL-LAWRENCE CURRENCY EXCHANGE, INC.<br>3421 W. Lawrence Avenue<br>Chicago, Illinois 60625<br><br>        Defendant. | Case No. _____ |

## **COMPLAINT**

1. This action arises under Title IV of the Employee Retirement Income Security Act of 1974 ("ERISA"), *as amended*, 29 U.S.C. §§ 1301-1461.

2. Plaintiff, Pension Benefit Guaranty Corporation ("PBGC"), brings this action under 29 U.S.C. § 1303(e)(1) with respect to the Kimball-Lawrence Currency Exchange, Inc. Pension Plan and Trust (the "Plan") to enforce the provisions of Title IV of ERISA, and to enforce a final agency determination that violations of Title IV have occurred.

3. This is an action for enforcement of PBGC's final agency determination based on review of the agency's administrative record, pursuant to 5 U.S.C. § 706. PBGC will file the administrative record with respect to its determination.

**Jurisdiction and Venue**

4. The Court has jurisdiction over this action under 29 U.S.C. § 1303(e)(3), as well as under 28 U.S.C. §§ 1331 and 1345.

5. Venue is proper in this Court under 29 U.S.C. § 1303(e)(2).

**Parties**

6. PBGC is a wholly owned United States government corporation that administers and enforces the defined benefit pension plan termination insurance program under Title IV of ERISA.

7. PBGC regulates the termination of defined benefit pension plans covered by Title IV of ERISA. Pension plans that have sufficient assets to pay all of a pension plan's benefit liabilities may be terminated in a "standard termination" under 29 U.S.C. § 1341(b).

8. For plans that terminate in a standard termination, PBGC ensures compliance with the requirements of Title IV of ERISA. PBGC is required to audit a statistically significant number of pension plans terminating under § 1341(b) to determine whether participants and beneficiaries have received their full benefits. 29 U.S.C. § 1303(a).

9. Defendant, Kimball-Lawrence Currency Exchange, Inc. ("Kimball-Lawrence"), is an Illinois corporation with its principal place of business in Chicago, Illinois.

10. At all relevant times, Kimball-Lawrence was the Plan's contributing sponsor within the meaning of 29 U.S.C. § 1301(a)(13).

11. At all relevant times, Kimball-Lawrence was the administrator of the Plan within the meaning of 29 U.S.C. §§ 1002(16), 1301(a)(1).

## Title IV  —  Standard Terminations

12. In a standard termination, the plan administrator is required to provide notice to the plan's participants of the intent to terminate the plan (the "NOIT").  29 U.S.C. § 4041(a)(2), and (b)(1)(A); 29 C.F.R. § 4041.23.  The NOIT serves as written notice to the plan's participants of the intended plan termination and provides the proposed termination date. 29 U.S.C. § 1341(a)(2).

13. In a standard termination, the plan administrator must allocate and distribute assets to the plan's participants and beneficiaries in accordance with 29 U.S.C. §§ 1341 and 1344.

14. In a standard termination, the plan's assets must be sufficient for benefit liabilities, determined as of the plan's termination date.  29 U.S.C. § 1341(b)(1)(D).

15. The plan administrator must distribute the plan's assets by (a) purchasing "irrevocable commitments" (*i.e.*, annuities) from a private insurer to satisfy all benefit liabilities, or (b) an alternative form of distribution (*e.g.*, lump-sum payment) "in accordance with the provisions of the plan and any applicable regulations. . . ."  29 U.S.C. § 1341(b)(3)(A)(i) and (ii).

16. The present value of lump-sum benefits paid in a standard termination must be valued as of the date of distribution.  29 C.F.R. § 4041.28(c)(2).

17. When valuing lump-sum benefit payments in the standard termination of a pension plan, the present value shall not be less than the present value calculated using "the applicable mortality table and the applicable interest rate" prescribed under section 417(e) of the Internal Revenue Code (the "417(e) Mortality Table," the "417(e) Interest Rate," and the "Code", respectively).  *See* 26 U.S.C. §§ 411(a)(11)(B), 417(e)(3)(A)(I); 29 U.S.C. §§ 1053(e)(2), 1055(g)(3)(A)(I).

18. The Pension Protection Act of 2006 ("PPA"), Pub. L. No. 109-280, 120 Stat. 780 (2006), amended the Code to change the 417(e) Interest Rate from the annual rate of interest on 30-year Treasury securities to certain segment rates derived from a corporate bond yield curve. PPA also replaced the 417(e) Mortality Table used for lump-sum calculations with a mortality table specified under section 430(h)(3)(A) of the Code. *See* PPA § 302, 120 Stat. 780, 920-21.

19. Under 26 U.S.C. § 411(d)(6), the accrued pension benefit of a participant may not be decreased by an amendment of the pension plan.

20. However, a pension plan covered under Title IV that adopted an amendment to change the 417(e) Interest Rate and 417(e) Mortality Table for minimum lump-sum determinations, in accord with PPA, is provided relief from 26 U.S.C. § 411(d)(6) if, among other conditions, the amendment was adopted on or before the last day of the first plan year beginning on or after January 1, 2009. PPA § 1107.

## The Plan

21. Effective June 1, 1982, the Plan was established to provide pension benefits to certain employees of Kimball-Lawrence.

22. The Plan is a single-employer, defined-benefit pension plan covered under Title IV of ERISA. *See* 29 U.S.C. § 1321.

23. Pursuant to section 2.3.11(d) of the Plan, participants could elect a benefit in the form of lump-sum payment that was the "actuarial equivalent" of the normal benefit payable under the Plan.

24. The Plan was amended on August 29, 2011, by adoption of the Amendment for Terminating Defined Benefit Plan (the "2011 Plan Amendment").

25. Section 14.2 of the 2011 Plan Amendment replaced the pre-PPA 417(e) Interest Rate and 417(e) Mortality Table used for lump-sum determinations to the applicable interest rate and mortality table specified by PPA.

26. With respect to the Plan, December 31, 2009, was the last day of the first plan year beginning on or after January 1, 2009, and thus the last day to adopt amendments changing pre-PPA minimum 417(e) Interest Rates and 417(e) Mortality Tables to those specified under PPA and receive relief from 26 U.S.C. § 411(d)(6). *See* PPA § 1107.

27. On or about October 21, 2011, PBGC received from Kimball-Lawrence a notice of intent to terminate the Plan in a standard termination under 29 U.S.C. § 1341(b) (the "Form 500"). *See* 29 C.F.R. § 4041.25.

28. In the Form 500, Kimball-Lawrence proposed a termination date of November 1, 2011.

29. On or before December 23, 2011, Kimball-Lawrence distributed benefits to the Plan's four participants in the form of lump-sum payments totaling $953,042.

30. A post-distribution certification (a "Form 501") is required under 29 C.F.R. § 4041.29.

31. On or about February 17, 2012, PBGC received from Kimball-Lawrence a Form 501 certifying that all benefit liabilities under the Plan were calculated correctly in accordance with ERISA's provisions and regulations, and that all benefit liabilities under the Plan were satisfied.

**The Plan Audit**

32. By a letter dated April 25, 2012, PBGC notified Kimball-Lawrence that the Plan's termination had been selected for audit.

33. On May 14, 2015, PBGC issued an initial determination letter with respect to its audit (the "Initial Determination").

34. The Initial Determination found that because the 2011 Plan Amendment was adopted after December 31, 2009, the Plan did not meet the conditions for relief from the prohibition against amending a plan to decrease accrued benefits under 26 U.S.C. § 411(d)(6). *See also* 29 U.S.C. § 1054(g).

35. The Initial Determination required Kimball-Lawrence (a) to calculate and take into account lump-sum payments to the Plan's participants using both the post-PPA 417(e) Interest Rate and 417(e) Mortality Table prescribed by the 2011 Plan Amendment, and the pre-PPA 417(e) Interest Rate and 417(e) Mortality Table in effect under the Plan prior to the adoption of the 2011 Plan Amendment, and (b) to distribute to the Plan's participants whichever lump-sum payments had greater present values.

36. By letter dated May 18, 2015, Kimball-Lawrence requested reconsideration of the Initial Determination.

37. On February 10, 2016, PBGC issued its final determination (the "Final Determination") affirming the Initial Determination.

38. On information and belief, as of the date of the filing of this Complaint, none of the additional benefit payments required by the Final Determination have been made to the Plan's participants and beneficiaries.

## Cause of Action

39. PBGC repeats and re-alleges paragraphs 1 through 38.

40. Lump-sum payments to the Plan's participants calculated using the pre-PPA 417(e) Interest Rate and 417(e) Mortality Table in effect under the Plan prior to the adoption of the 2011 Plan Amendment exceed the lump-sum payments calculated in accordance with the 2011 Plan Amendment and distributed to the Plan's participants.

41. The 2011 Plan Amendment was not adopted in time to receive relief, under PPA § 1107, from the prohibition against reducing accrued benefits under 26 U.S.C. § 411(d)(6).

42. Accordingly, by failing to calculate and take into account lump-sum payments to the Plan's participants using the pre-PPA 417(e) Interest Rate and 417(e) Mortality Table in effect under the Plan prior to the adoption of the 2011 Plan Amendment, Kimball-Lawrence reduced the Plan's participants' accrued benefits in violation of 26 U.S.C.§ 411(d)(6).

43. Because Kimball-Lawrence did not pay the full amount of accrued benefits under the Plan, as required by applicable law, it has not fully satisfied all benefit liabilities due under the Plan in violation of 29 U.S.C. § 1341.

44. Pursuant to 29 U.S.C. §§ 1303 and 1341, Kimball-Lawrence is liable for additional distributions to the Plan's participants and beneficiaries, in accordance with the Final Determination.

**Request for Relief**

WHEREFORE, PBGC respectfully requests that this Court:

(1) Enter judgment in favor of PBGC against Kimball-Lawrence enforcing PBGC's Final Determination and requiring Kimball-Lawrence to comply with the provisions of Title IV of ERISA;

(2) Award to PBGC all costs and expenses of litigation incurred in connection with this action; and

(3) Grant such other legal or equitable relief as shall be just and proper.

Respectfully submitted,

Dated: July 25, 2016
/s/ Marc S. Pfeuffer
ISRAEL GOLDOWITZ
Chief Counsel
CHARLES L. FINKE
Deputy Chief Counsel
SARA B. EAGLE
Assistant Chief Counsel
MARC S. PFEUFFER
Attorney
Telephone: (202) 326-4020, ext. 4903
Facsimile: (202) 326-4112
Email: pfeuffer.marc@pbgc.gov

Attorneys for Plaintiff
PENSION BENEFIT GUARANTY
CORPORATION
1200 K Street, N.W.
Washington, D.C. 20005

DESIGNATION OF LOCAL COUNSEL

Pursuant to Local Rule 83.15, the Plaintiff, Pension Benefit Guaranty Corporation, hereby designates Michael Kelly of the Office of the United States Attorney for the Northern District of Illinois as its local counsel for this matter.

/s/ Marc S. Pfeuffer
MARC S. PFEUFFER
Attorney, Pension Benefit Guaranty Corporation